IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In the Matter of THE COMPLAINT OF UNDER THE BRIDGE WATERSPORTS, LLC, as Owner of the 2001 Godfrey Marine Company 22' 0" pontoon vessel Seeking Exoneration from or Limitation of Liability. | *<br><br>*<br><br>Civil Action No. GLR-20-1111<br><br>* |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Claimants Michael Dorris and Christina Dorris, individually and as Parents and Next Friends of Nathaniel Dorris and Milena Dorris; Jennifer Tressler, individually and as Parent and Next Friend of Connor Tressler; and Logan Tressler, Luke Tressler, and Damon Schorr's ("Claimants") Motion for Leave to File a Motion to Join Paradise Parasail, LLC, and West OC Marina, LLC, under FRCP 20 (ECF No. 36) and Claimants' Motion to Join Paradise Parasail, LLC, and West OC Marina, LLC, under FRCP 20(a)(2) (ECF No. 37). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will deny the Motions.

### I.   BACKGROUND

**A.   Factual Background**

Complainant Under the Bridge Watersports, LLC ("UTB"), filed the above-captioned Complaint Seeking Exoneration or, in the Alternative, Limitation of Liability, following an incident that occurred in the Chesapeake Bay on August 1, 2019 (the "Incident"). (Compl. Seeking Exoneration Alternative Limitation Liability ["Compl."] ¶¶ 4–5, ECF No. 1). The Incident occurred on a 2001 Godfrey Marine Company 22'0"

pontoon vessel, Hull ID No. GDY2370PJ001, Boat No. MD 3273 LB (the "Vessel"), which was owned by UTB during all times relevant to this dispute. (Id. ¶ 2). The Vessel was occupied by fifteen passengers, including Claimants, at the time of the Incident. (Id. ¶ 4).

UTB alleges that due to Dorris operating the Vessel "at an excessive rate of speed and fail[ing] to keep a safe lookout," the Vessel ran onto a sandbar and flipped, causing all fifteen passengers to go overboard. (Id. ¶ 5). Claimants assert that the Vessel became stuck on the sandbar because it was overweight at the time of the Incident. (Verified Claims Resp'ts ["Claims"] ¶¶ 4–8, ECF No. 11). According to Claimants, after the Vessel became stuck, it drifted, struck the Chesapeake Bay Bridge, and capsized. (Id. ¶¶ 9–11). Claimants assert they suffered serious injuries as a result of the Incident. (Id. ¶ 11).

With that brief summary of the broader dispute, the Court turns to the facts underlying the pending Motions. Discovery began in this action on May 6, 2021 and concluded on December 30, 2021. (Jointly Proposed Scheduling Order ["S.O."] at 2, ECF No. 22). Claimants note that they took the depositions of UTB employees Cameron Riley and Brenda Anthony on December 1 and 15, 2021, and UTB owner Tyler Barnes on December 16, 2021. (Claimants' Mot. Leave File Mot. Join Paradise Parasail, LLC & West OC Marina, LLC FRCP 20 ["Mot. Leave"] at 2, ECF No. 36). Claimants claim that through these depositions, they learned that at the time of the Incident, Barnes "owned and operated three entities, including UTB, all of which shared staff and vessels, including pontoon boats such as, and potentially including, the Vessel." (Id.). The deponents identified the two other entities Barnes owned as Paradise Parasail, LLC and West OC Marina, LLC (the "Prospective Parties"). (Id. at 2–3).

Three months prior to these depositions, UTB provided Answers to Claimants' Interrogatories in which they stated that at the time of the Incident, UTB and the Prospective Parties "were all separate entities owned by the same individual, Tyler Barnes. At times all three entities may have shared equipment and/or employees, however such instances were not commonplace; usually each entity had its own equipment and its own employees." (Complainant's Answers Resp't's First Set Ints. ["Int. Answers"] at 3, ECF Nos. 38, 57-1). The relationship between UTB and the Prospective Parties was further evident in paperwork presented to Claimants by UTB prior to the rental of the Vessel, namely the "Participant Agreement, Release and Assumption of Risk," the "Protective Wetsuit Refusal Agreement," and the rented vessel manifest. (See UTB Forms at 1–8, ECF Nos. 42–49). All three forms, which Claimants signed prior to the Incident, reference all three of the Barnes-owned entities. (See id.). For example, the first paragraph of the executed Participant Agreement, Release and Assumption of Risk (the "Release") describes the entities providing services to Claimants as "Under the Bridge Watersports LLC, West OC Marina LLC, Paradise Parasail LLC, their agents, owners, officers, volunteers, employees, and all other persons or entities acting in any capacity on their behalf, (hereinafter collectively referred to as 'UBW')." (Id. at 1–4).

Claimants assert that UTB's Interrogatory Answer understated the depth of the relationship between UTB and the Prospective Parties, which the December depositions revealed "were managed and staffed by the same group of employees" and "would share vessels, including pontoon boats and jet skis, based on the demand of each location and the functioning of the vessels throughout that time frame." (Mot. Leave at 3; see Cameron

3

Michael Riley Dep. ["Riley Dep."] at 39:15–40:19, ECF No. 39; Brenda Anthony Dep. ["Anthony Dep."] at 11:12–13:9, ECF No. 40). Claimants further direct the Court's attention to the deposition of Brenda Anthony, who testified that the UTB "managers" responsible for overseeing UTB's operations of at the time of the Incident were typically not on location at UTB but could "always" be found at the location of Paradise Parasail, LLC. (Anthony Dep. at 13:21–14:10). Subsequent Interrogatory Answers by UTB clarified that UTB was not aware of any instance when the Vessel was used by either of the Prospective Parties. (Int. Answers at 13–14). At this time, there remains no evidence in the record suggesting that the Vessel was used by either of the Prospective Parties.

**B.**     **Procedural History**

UTB filed this limitation action on April 30, 2020. (ECF No. 1). On May 13, 2020, Claimants filed their Answer. (ECF No. 6). On September 17, 2020, this Court entered its Order and Monition directing that:

> [A]ll persons claiming damages for any and all losses, damages, or injuries occasioned by or resulting from the occurrence on August 1, 2019, on the 2001 Godfrey Marine Company 22'0" pontoon vessel, citing them to file their respective claims on or before [November 17, 2020], at 4:00 p.m., with the clerk of this court in writing under oath and to mail or serve a copy of their respective claims on petitioner's attorneys . . . .

(Sept. 17, 2020 Order ["Order & Monition"] at 2, ECF No. 8). On November 16, 2020, Claimants filed their Verified Claims (ECF No. 11). The Claims do not reference the Prospective Parties. (Id.).

4

On December 7, 2020, UTB filed its Answer to the Verified Claims and a Counterclaim against Dorris and Tressler. (ECF No. 12). Dorris and Tressler filed an Answer to the Counterclaim on December 28, 2020. (ECF No. 13). Pursuant to the parties' request, the Court stayed the action pending a mediation with a United States Magistrate Judge ("USMJ"). (ECF No. 16). While the mediation was pending, Dorris and Tressler filed an Amended Answer to the Counterclaim (ECF No. 20).

On May 6, 2021, the parties notified the Court that the mediation had been unsuccessful. (ECF No. 21). The following day, the Court issued a Scheduling Order and Discovery Order (ECF Nos. 22, 23). The Scheduling Order provided that the parties' deadline for moving for joinder of additional parties and amendment of pleadings was June 30, 2021, and discovery closed on December 30, 2021. (S.O. at 2). At the close of discovery, the parties filed a status report in which they notified the Court of their desire to participate in another mediation with a USMJ. (ECF No. 32). The parties also alerted the Court to a potential dispute relating to certain discovery sought by Claimants. (Id.). On January 7, 2022, the Court issued an Order directing the parties to schedule another mediation and brief the discovery dispute if they were unable to resolve it. (ECF No. 34).

On January 21, 2022, Claimants filed the Motion for Leave to File a Motion to Join Paradise Parasail, LLC, and West OC Marina, LLC, under FRCP 20 (ECF No. 36) and Motion to Join Paradise Parasail, LLC, and West OC Marina, LLC, under FRCP 20(a)(2) (ECF No. 37) that are the subject of this Opinion. The parties then participated in a second unsuccessful settlement conference on February 4, 2022. (See ECF No. 52). The status report following the settlement conference indicated that Claimants sought certain

5

discovery relating to the Prospective Parties, while UTB believed that discovery had completed and should not be reopened. (Id.). On February 11, 2022, both parties filed correspondence with the Court indicating their desire to file cross-motions for summary judgment. (ECF Nos. 53, 54). UTB then filed its Oppositions to Claimants' Motions on February 15, 2022. (ECF Nos. 57, 58). Claimants did not file replies.

## II.     DISCUSSION

### A.     Standards of Review

Although Claimants seek joinder under Federal Rule of Civil Procedure 20, their Motions necessarily implicate Rules 15 and 16, which relate to amending pleadings and scheduling orders, respectively. The Court will outline the respective standards in turn.

#### 1.     Rule 20

A proposed joinder must satisfy the requirements of Federal Rule of Civil Procedure 20(a)(2). See 4 James Wm. Moore et al., Moore's Federal Practice § 20.02 (3d ed. 1999) ("Plaintiff has the burden of demonstrating that the proposed restructuring of the litigation satisfies both requirements of the permissive party joinder rule."). Under Federal Rule of Civil Procedure 20(a)(2), the Court can permissively join defendants to an action if "(A) any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." The Fourth Circuit has held "that Rule 20(a) 'should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'"

6

Fangman v. Genuine Title, LLC, No. RDB-14-0081, 2015 WL 8315704, at *6 (D.Md. Dec. 9, 2015) (quoting Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983)).

Nonetheless, "[j]oinder under the rule is only appropriate when both specific requisites are met: the claims must arise out of the same transaction, series of transactions, or occurrence, and some question of law or fact common to all parties must be present." Grennell v. W.S. Life Ins., 298 F.Supp.2d 390, 397 (S.D.W.Va. 2004). "There is no clear rule or generalized test in considering whether a set of facts constitute a single transaction or occurrence, and courts have generally adopted a case-by-case approach." Stephens v. Kaiser Found. Health Plan, 807 F.Supp.2d 375, 382 (D.Md. 2011). "The propriety of joinder rests within the sound discretion of the trial court." LHF Prods., Inc. v. Does 1-25, No. 16-283, 2016 WL 7422661, at *4 (E.D.Va. Dec. 22, 2016).

### 2. Rule 16

As set forth above, under the operative Scheduling Order in this case, the parties' deadline for moving for joinder of additional parties and amendment of pleadings was June 30, 2021, and discovery closed on December 30, 2021. (S.O. at 2). Because discovery has closed, granting the Motions would require amendment of the Scheduling Order. Under Federal Rule of Civil Procedure 16, this can be done "only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4); see also Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."); Hunt Valley Baptist Church, Inc. v. Balt. Cnty., No. ELH-17-804, 2019 WL 3238950, at

*4 (D.Md. July 17, 2019) ("[W]hen a movant fails to satisfy Rule 16(b), the court need not consider Rule 15(a).").

"The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant. Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" Rassoull v. Maximus, Inc., 209 F.R.D. 372, 374 (D.Md. 2002) (quoting W.V. Housing Dev. Fund v. Ocwen Tech. Xchange, Inc., 200 F.R.D. 564, 567 (S.D.W.Va. 2001)); see also Wonasue v. Univ. of Md. Alumni Ass'n, 295 F.R.D. 104, 107 (D.Md. 2013) (stating that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" (quoting CBX Techs., Inc. v. GCC Techs., LLC, No. JKB-10-2112, 2012 WL 3038639, at *4 (D.Md. July 24, 2012))). This Court has held that the following additional factors may be considered in determining whether there is good cause: "the 'danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.'" Tawwaab v. Va. Linen Serv., Inc., 729 F.Supp.2d 757, 768–69 (D.Md. 2010) (quoting Rothenberg v. Marriott Int'l, Inc., No. CCB-08-173, 2008 WL 687033, at *1 (D.Md. Feb. 29, 2008)).

### 3. Rule 15

Claimants' request to join the Prospective Parties would necessarily require amending Claimants' Verified Claims, which currently do not name the Prospective Parties. (See generally Claims ¶ 11). Indeed, any court considering a motion to join additional parties "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." Hinson v. Norwest

8

Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001). Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." "This directive gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (quoting Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009)). The decision to grant leave to amend lies within the discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va., 985 F.2d 164, 167 (4th Cir. 1993).

Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offs. of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001). Leave to amend is futile when an amended pleading could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). In determining whether an amendment is prejudicial, the Court considers the nature of the amendment and its timing. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). The further a case has progressed, the more likely it is that amendment will be prejudicial. Mayfield, 674 F.3d at 379.

**B.     Analysis**

As set forth above, Claimants' Motions relate to several Federal Rules of Civil Procedure. The Court will evaluate the propriety of the proposed joinder under each of the relevant rules.

### 1. Rule 20

Claimants satisfy the requirements for joinder under Rule 20. Even in the absence of a proposed amendment to the Verified Claims, there is no question that Claimants' allegations against the Prospective Parties would "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and would involve "question[s] of law or fact common to all defendants." See Fed.R.Civ.P. 20(a)(2). Thus, assuming the amendments otherwise comport with Rules 15 and 16, joining the Prospective Parties would likely "promote trial convenience and expedite the final determination of disputes." Fangman, 2015 WL 8315704, at *6 (quoting Saval, 710 F.2d at 1031). Accordingly, the Court finds that Claimants' Motions satisfy Rule 20.

### 2. Rule 16

As set forth above, discovery closed in this action on December 30, 2021. Accordingly, granting the Motions would require amending the Scheduling Order. Claimants argue that their delay in filing the Motions was justified because they did not become aware of the extent of the relationship between UTB and the Prospective Parties until December 2021. To be sure, this Court has held that "a finding of 'good cause' is justified under Rule 16(b) where at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." Tawwaab, 729 F.Supp.2d at 768; see also Abitu v. GBG, Inc., No. PWG-17-8, 2018 WL 2023557, at *3 (D.Md. May 1, 2018) (finding that belated amendment may be justified where a plaintiff

does not learn of evidence needed to support a claim until after a deposition).[1] Thus, according to Claimants, because they only learned of the deep connections between UTB and the Prospective Parties in December 2021, the Court should find good cause for amending the Scheduling Order. The Court finds, however, that this case is distinguishable from Tawwaab and Abitu and that there is no good cause to amend the Scheduling Order.

In Tawwaab, the plaintiffs explained that a deposition had revealed previously unknown facts concerning the relationship between a defendant company and another company they sought to join in the lawsuit. Specifically, well after the joinder and amendment deadline had passed, the Tawwaab plaintiffs first learned of information concerning the shared ownership, operational overlap, and comingling of funds between the two companies. 729 F.Supp.2d at 770. Similarly, the deposition in Abitu revealed that certain required daily machine inspections were occurring only on a weekly basis. 2018 WL 2023557, at *3. In this case, however, Claimants were or should have been aware of the existence of the Prospective Parties and their close relationship with UTB well in advance of the end of discovery—arguably even before this litigation commenced. Claimants signed multiple forms prior to the Incident defining the entities providing services to Claimants as "Under the Bridge Watersports LLC, West OC Marina LLC, Paradise Parasail LLC, their agents, owners, officers, volunteers, employees, and all other persons or entities acting in any capacity on their behalf, (hereinafter collectively referred to as 'UBW')." (See UTB Forms at 1–4). No such pre-litigation evidence was referenced

---

[1] The Court notes that the motion to amend in Abitu was ultimately denied on other grounds. See id. at *4.

by the Court in Tawwaab or Abitu. Moreover, although the information came after the joinder and amendment deadline, Claimants still received discovery responses three months before the depositions providing that at the time of the Incident, UTB and the Prospective Parties "were all separate entities owned by the same individual, Tyler Barnes. At times all three entities may have shared equipment and/or employees, however such instances were not commonplace; usually each entity had its own equipment and its own employees." (Int. Answers at 3). These facts materially distinguish this case from Tawwaab and Abitu.

Moreover, the new evidence Claimants reference in the Motions—that UTB and the Prospective Parties "were managed and staffed by the same group of employees" and "would share vessels, including pontoon boats and jet skis, based on the demand of each location and the functioning of the vessels throughout that time frame," (Mot. Leave at 3; see Riley Dep. at 39:15–40:19, Anthony Dep. at 11:12–13:9)—does not appear to this Court to be particularly illuminating. Indeed, the entire crux of the supposedly revelatory information revealed in the December depositions appears to be that UTB and the Prospective Parties not only shared equipment and employees sometimes, but often. There is no evidence in the record that either of the Prospective Parties used the Vessel. And apart from Claimants conclusory assertion that the Prospective Parties are "jointly and severally liable with [UTB] for the occurrence that resulted in the injuries and damage to the Claimants," (Mem. Supp. Claimants' Mot. Join Paradise Parasail, LLC & West OC Marina, LLC FRCP 20(a)(2) ["Mot. Join"] at 5, ECF No. 37-1), Claimants do not provide an explanation in either of their Motions regarding how the new testimony establishes

liability on the part of the Prospective Parties or why the deposition testimony was needed to assert claims against them. Thus, the Court finds that Claimants have failed to show "that, despite diligence, the proposed claims could not have been reasonably brought in a timely manner." See NH Special Events, LLC v. Franklin Exhibits Mgmt. Grp., No. CBD-19-1826, 2020 WL 6063482 at *2 (D.Md. Oct. 14, 2020). Accordingly, the Court finds that Claimants have not shown good cause for their delay in seeking amendment and will deny the Motions.

### 3. Rule 15

Even if the Court were inclined to grant Claimants' implicit request to amend the scheduling order under Rule 16, it would deny the Motions for failure to satisfy the Rule 15 requirements for amendment of pleadings. As set forth above, leave to amend a pleading is properly denied when amendment would prejudice the opposing party or amendment would be futile. Edell & Assocs., 264 F.3d at 446. "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" Laber, 438 F.3d at 427 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)).

By contrast, an amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)); see also Kalos v. Law Offs. of Eugene A. Seidel, P.A., No. JCC-09-833, 2009 WL 4683551, at *3 (E.D.Va. Dec. 3, 2009) ("Because the trial date is not yet set and no discovery has been taken, the

13

Court finds that allowing leave to amend the Amended Complaint would not be unduly prejudicial to Defendants."). Additionally, an amendment is not prejudicial if the plaintiff does not add new claims or parties. See Heavener v. Quicken Loans, Inc., No. 3:12-CV-68, 2013 WL 1314563, at *3 (N.D.W.Va. Mar. 26, 2013) ("Defendants will not be prejudiced by the amendments as Plaintiff has only added more facts to support his claim—he has not alleged new claims or added new parties.").

The Court first notes that its ability to determine the futility of Claimants' proposed amendments is hampered by the absence of a proposed amendment to the Verified Claims. Apart from the conclusory assertion that the Prospective Parties are "jointly and severally liable with [UTB] for the occurrence that resulted in the injuries and damage to the Claimants," (Mot. Join at 5), Claimants leave it to the Court to speculate as to the specific factual allegations Claimants would levy against the Prospective Parties establishing their liability. The Court declines to do so. See ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 218 (4th Cir. 2019) (finding that where plaintiffs' request to amend "never indicated what amendments they were seeking," "never identified any facts they sought to include in an amendment," and "never identified any cause of action they sought to add in an amendment," "there was no way for a district court to evaluate whether the proposed amendments were futile or not"). The Court will thus deny Claimant's implied motion to amend on this basis.

Even assuming Claimants' proposed amendments were not futile, the Court finds that the amendments would be prejudicial to UTB because of how far the case has progressed. See Mayfield, 674 F.3d at 379. Here, Claimants seek to add two new parties to

the litigation after the close of discovery without providing satisfactory grounds for the delay in their proposed amendment. The Court finds that allowing the amendment at this late date this would cause undue prejudice to UTB. See CDC-LCGH, LLC v. Mayor & City Council of Balt., No. WDQ-06-2235, 2008 WL 11451510, at *5 (D.Md. Feb. 29, 2008) (denying motion to amend on the basis that plaintiff had failed to explain the delay in seeking amendment), aff'd, 313 F.App'x 637 (4th Cir. 2009); Surratt v. Pinnacle Mining Co., LLC, No. 5:15-CV-15444, 2016 WL 6404056, at *2 (S.D.W.Va. Oct. 26, 2016) ("[T]he extent of the delay [in seeking leave to amend], extending nearly to the close of discovery, constitutes undue delay."). The Court will thus also deny the Motions on this basis.

**C.**     **Requests for Discovery and to File Motions for Summary Judgment**

Finally, the Court notes that in the parties' February 11, 2002 Joint Status Report, Claimants assert that Complainants have blocked access to certain documents and testimony from the Prospective Parties and their agents. (Joint Status Rep. Due Feb. 11, 2022 at 1–2, ECF No. 52). The Court is unclear, however, whether Claimants will continue to assert that they require that discovery now that the Court has denied their Motions and will not allow Claimants to join the Prospective Parties.

The Court expects to grant the parties' requests to file cross-motions for summary judgment. However, it will refrain from issuing such an order until it has clarity on whether an extant discovery dispute remains. Accordingly, the Court will direct the parties to confer and determine, in light of this Opinion and the Court's decision to not permit joinder of the

15

Prospective Parties, whether Claimants continue to believe that they require additional discovery pertaining to the Prospective Parties.

The parties should apprise the Court of whether such a discovery dispute exists. If there remains an extant discovery dispute, the parties should present it to the Court in accordance with the Discovery Order (ECF No. 23). If no discovery dispute remains, the Court will grant the parties' requests to file cross-motions for summary judgment (see ECF Nos. 53, 54). In that case, the parties should file a status report containing a joint proposed scheduling order for briefing the motions.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Claimants' Motion for Leave to File a Motion to Join Paradise Parasail, LLC and West OC Marina, LLC, under FRCP 20 (ECF No. 36) and Claimants' Motion to Join Paradise Parasail, LLC and West OC Marina, LLC, under FRCP 20(a)(2) (ECF No. 37). A separate Order follows.

Entered this 6th day of April, 2022.

/s/
George L. Russell, III
United States District Judge